LAND, J.
The transcript in this case, exclusive of formal requisites, consist exclusively of the following stipulation and statement of facts and Exhibits A, B, and O: Stipulation and statement of facts:
“It is agreed and stipulated that the following are the facts upon which the opposition of Westfeldt Bros., agents, is made, and upon which it is resisted by the receiver:
“First. Westfeldt Bros, are agents of certain nonresident firms, and as such issued letters of credit for- Cage, Drew & Co., Dimited, such as are shown by the exhibit hereto attached and marked ‘Exhibit A.’
“Second. These letters of credit were issued to Gustave Trinks & Co. upon the application of Gage, Drew & Co., Limited, which application contained certain covenants and agreements, and a true copy thereof is shown by the annexed exhibit, marked ‘Exhibit B.’
“Third. A credit being established by the use of such letters of credit, credit purchases of coffee were made in South America at Rio de Janeiro, and were thenee shipped to New Orleans. The bills of lading for such coffee were sent to Westfeldt Bros., agents, and then Westfeldt Bros., agents, had received of Cage, Drew & Go., Limited, a trust receipt, as per Exhibit O, for such merchandise, and delivered to Cage, Drew & Co., Limited, the bags of coffee described in the bills of lading and in the receipt for purposes of sale, as expressed in the application for the letter of credit and in the receipt. (See true copy of receipt hereto annexed, and marked ‘Exhibit C.’)
“Fourth. At the date that Cage, Drew & Co., Dimited, went into the hands of a receiver, Westfeldt Bros., agents, held either the original bills of lading for coffee or receipts of Cage, Drew & Co., Limited, for such bills, and such receipts as are shown by the Exhibit C, being given for the coffee or for the bilis of lading.
“Fifth. At the time W. R. Irby took charge of the property of Cage, Drew & Company, Limited, as receiver, Westfeldt Bros., agents, demanded the coffee held under these receipts and still in the possession of Cage. Drew & Co., Limited, and had the same turned over to them (Westfeldt Bros., agents) as their property, under the terms of the receipt and under the terms of the application for letters of credit.
“The property, the bags of coffee, thus delivered to them (Westfeldt Bros., agents) they sold at current market rates, and now claim of the receiver the difference between the price of the coffee, plus the cost of its delivery and the expenses at New Orleans, and the amount for which they sold it; that is, they claim that the price of the coffee, plus the cost of delivery and expenses at New Orleans, was $54,-025.05, and that the proceeds of the sales made by them, amounting to $45,464.91, show the difference aforesaid to be $8,500.14, and this difference is expressed in the statement of account rendered by Westfeldt Bros., agents, as against Gage, Drew & Go., Limited, and is annexed hereto.
“Westfeldt Bros., agents, opposed the receiver’s account, claiming to be creditors for this difference. The receiver has refused to recognize the claim.
“The question submitted to the court is: Who should bear this apparent loss?
“Clegg & Quintero.
“Hall & Monroe.”
Exhibit A:
“No. W/2452 for £4,185-0-0.
“New Orleans, Mcb. 4, 1906.
“Messrs. Gustave Trinks & Go., Rio de Janeiro.
“Sirs: We hereby.open a credit in your favor for forty-five hundred and eighty-five pounds sterling, to be used by your drafts on us, at ninty days’ sight, for tlie purchase of 2,000 bags of coffee, to be shipped to New Orleans for account of Messrs. Cage, Drew & Co., Limited, New Orleans, La. And we agree with yourselves as drawers, and with the indorsers and bona fide holders, respectively, of your drafts, to accept the same, drawn as aforesaid, on receipt of due advice and of bill of lading (original and duplicate advice to be accompanied by one bill of lading each), together with abstract of invoice. The other bills of lading and consular invoice to be sent direct to Messrs. Westfeldt *618 Bros., New Orleans. The bills of lading are to be made out to ‘order.’
“And indorsed in blank by you.
“And the negotiator will please indorse the amount of each draft on this credit.
* * * * * S|S !j<
“The marine insurance on the shipments hereunder is cared for by Messrs. Gage, Drew & Co., Limited, New Orleans, La.
“This credit to be in force in Rio de Janeiro until June 14, 1906. Please fill up drafts as follows: ‘Against your letter of credit No. W/2402.’ Dated New Orleans, March 14, 1906.
“We are, sir, your most obedient servants, “Dennistoun, Cross & Co., of London,
“By Their Agents in New Orleans, “[Signed] W. Bros.”
Exhibit B:
“See. 1. Received the letter of credit, of which the annexed is a copy, for forty-one hundred and eighty-five pounds sterling, in consideration whereof we hereby agree with Messrs. Dennistoun, Cross & Co., of London, to provide, previous to the maturity of the bills drawn in virtue of said credit, sufficient funds in cash, or in satisfactory bills on London, at not exceeding sixty days’ sight, indorsed by us to meet the payment of the same, together with their commission.
“Sec. 2. It is understood that moneys paid to Messrs. Westfeldt Bros., New Orleans, shall be taken as payment without recourse, and that, in all settlements arising under this credit, the pounds sterling shall be calculated at the current rate of exchange at the time of such settlement.
“Sec. 3. It is further understood that each draft is to be settled to a point, without commission as above, and interest adjusted in a net rate of exchange at the time of payment.
* “Sec. 4. In the event, however, of settlement not being so made to a point, then Messrs. Dennistoun, Cross & Co. are to furnish their account current semiannually, charging interest at the rate of 5 per cent, per annum, or at the current rate if it be above that.
“See. 5. And we hereby recognize and admit the ownership of Messrs. Dennistoun, Cross • & Co., and their right to the possession and disposal of all goods, and the proceeds thereof, for which Messrs. Dennistoun, Cross & Co. may come under any engagements in virtue of this credit, as also to the possession of all bills of lading for, and policies of insurance on, such goods, until such time as any indebtedness or liability existing as against us in favor of Messrs. Dennistoun, Cross & Co., under the said credit or otherwise, shall have been fully paid up and discharged.
“Sec. 6. In the event of their hereafter intrusting, through the agency of Messrs. Westfeldt Bros, or otherwise, said goods to us for the purpose of sale or otherwise, we hereby consent that their rights to repossess themselves of the same, or of any proceeds thereof may be exercised at their discretion.
“Sec. 7. Any proceeds of said goods coming into Messrs. Dennistoun, Cross & Co.’s hands are to be applied against their acceptance under this credit, or against any other indebtedness of ours to them, including all expenses incurred by them, and commissions of sale and guarantee.
“Sec. 8. It is understood and agreed between Messrs. Dennistoun, Cross & Co. and us that Gustave Trinks & Co. nor Messrs. Westfeldt Bros, are to be under said credit, are in all respects to be regarded as our agents, and that neither Messrs. Dennistoun, Cross & Co. nor Messrs. Westfeldt Bros, are to be under any responsibility to us in respect to the bills of lading or other documents which are required to accompany the bills drawn, nor shall any fraud or error in, or nonconformity of, or deficiency of, bills of ladings or other documents, nor any question as to their genuineness, be any defense against our obligation for reimbursement in respect of bills actually drawn by the party designated for drawing bills under said credit.
“Sec. 9. The marine insurance to be done by us in the London Assurance (Marine). Messrs. Dennistoun, Cross & Co.’s charge for commission to be-per cent, on the amount used.
“Sec. 10. All securities which shall be received by Messrs. Dennistoun, Cross & Co. hereunder may be held and applied by them also to secure all other indebtedness or liability existing, or which may hereafter arise, from us to them.
“Sec. 11. This obligation is to continue íd force and to apply to all transactions, notwithstanding any change in the individuals composing the respective firms, parties to or concerned in this contract, or either of them, or in that of the use of this credit, whether such change shall arise from the accession of one or more new partners or from the death or secession of any partner or partners.
“[Signed] O., D. & Co., Ltd.”
Exhibit C:
“D.55 'New Orleans, May 14, 1906.
“Received from Messrs. Westfeldt Bros., of New Orleans, Messrs. Dennistoun, Cross & Co.’s merchandise specified in the bill of lading, per S. S. Horace, C. D. 1/5 — 2,000 bags of coffee, shipped by Gustave Trinks & Co., in consideration of which we agree to hold the same on storage, as Messrs. Dennistoun, Cross & Co.’s property (with liberty to sell the same, and on such sale to pay over or deliver the same, and on such sale to pay over or deliver the proceeds to Messrs. Westfeldt Bros.), until the bills of exchange, drawn on Messrs. Dennistoun, Cross & Co., of London, for the purchase money of the said goods, shall have been remitted for by us or satisfactory provided for by us, and to beep the said property insured against fire and free from incumbrance; the intention of this undertaking being to protect and preserve, unimpaired, the ownership of Messrs. Dennistoun, Cross & Co. in the said property.
“[Signed] C., D. & Co.. •
“J. C. D., Y. P. and Treas.”
*620 Taking all the exhibits together, they evidence an undertaking on the part of Dennistoun, Cross & Co. to pay for 2,000 bags of coffee for account of Cage, Drew «fe Co., which company was to provide the necessary funds to reimburse Dennistoun, Cross <& Co. money advanced, with interest and commissions, by the sale of the coffee in the usual course of business. In order to protect Dennistoun, Cross <& Co., they were to hold the bills of lading and invoices, and after delivery of the coffee for the purposes of sale were to have the right, at their discretion, to repossess themselves of the same or any proceeds thereof. Section 7, Exhibit B, provides that any proceeds of the coffee coming into the hands of Dennistoun, Cross & Co. were to be applied against their acceptance under the letter of credit, or against any other indebtedness of Cage, Drew <& Co. to them, including all expenses, commissions of sale, and guarantee. Section 5 of the same exhibit measures the rights of ownership (so-called), possession, and disposal recognized in Dennistoun, Cross <& Co. by the extent of their claims against Cage, Drew «& Co. Exhibit C recites the receipt of the 2,000 bags of coffee, to be held on storage as the property of Dennistoun, Cross «& Co., with the liberty on the part of Cage, Drew & Co. to sell the same, and on such sale to pay over or deliver the proceeds, until the bills drawn on Dennistoun, Cross «& Co. for the purchase money of said goods shall have been remitted or satisfactorily provided for. The ownership (so-called) of Dennistoun, Cross & Co. in said 2,000 bags of coffee -was measured by the extent of their legitimate claims against Cage, Drew <& Co., and it is evident that the latter would have been entitled to any profits that might have been made by the sale of the coffee over and beyond their indebtedness to Dennistoun, Cross & Co.
We are clearly of the opinion that under sections 5 and 7 of Exhibit B, and under Exhibit C, if the coffee had sold for more than enough to pay the indebtedness due Dennistoun, Cross «fe Co., the receiver of Cage, Drew «& Co. would have been entitled to the surplus. Cage, Drew «fe Co. bargained for the coffee, were to receive and sell it, and were to reap the profits, if any, of the transaction, over and above the purchase price, interest, and commissions, which they bound themselves unconditionally to pay. The legal title was in Dennistoun, Cross & Co. for the purpose of security, and they were accountable for the proceeds of the sale.
The contention of the receiver that the transaction was a conditional sale, which was rescinded by the vendor resuming possession of the property, is without merit. The right to repossess, sell, and apply the proceeds to the payment of the debt was conferred by the contract and was exercised pursuant to its provisions. The loss should fall on the party who assumed the risk and would have reaped the profits.
It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that the opposition of Westfeldt Bros., agents, be maintained, and that they be recognized and placed on the account of the receiver of Cage, Drew «& Co., Limited, as ordinary creditors for the sum of $8,560.14; and it is further ordered that all costs of the opposition and of appeal be paid by the receivership.